IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUSTIN S. KOLODZIEJ | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-01889 |
| | § | |
| JAMES CHENEY MASON AND | § | |
| J. CHENEY MASON, P.A. | § | |
| *Defendants* | § | Jury Demanded |

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTIONS TO DISMISS AND MOTION TO TRANSFER VENUE

David George
Federal ID No. 19330
Texas Bar No. 00793212
CONNELLY • BAKER • WOTRING LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002
Telephone:  (713) 980-1717
Facsimile: (713) 980-1701
dgeorge@connellybaker.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF DUSTIN S. KOLODZIEJ

# TABLE OF CONTENTS

Table of Contents ................................................................................................. ii

Table of Authorities ............................................................................................. iv

Nature and Stage of Proceeding ......................................................................... 1

Issues .................................................................................................................... 2

Standards of Review ............................................................................................ 2

Summary of Argument ........................................................................................ 4

Background ........................................................................................................... 5

    Mason represented a wealthy businessman in a high-profile
    capital-murder trial. ..................................................................................... 5

    Mason issued his million-dollar challenge on national television. ........... 6

    Kolodziej accepted Mason's challenge. ..................................................... 7

    Mason breached his contract when he refused to pay Kolodziej ............. 8

Argument .............................................................................................................. 9

    I.    This Court should deny Mason's motion to dismiss for lack
        of personal jurisdiction. ..................................................................... 9

        A.   Mason has minimum contacts with Texas because he
            broadcast his challenge on national television. .................... 10

        B.   Kolodziej is suing over that challenge, so his lawsuit
            arises from Mason's Texas contacts. ..................................... 12

    II.   This Court should deny Mason's motion to dismiss for
        improper venue. ................................................................................ 12

    III.  This Court should deny Mason's motion to transfer this case
        to the Middle District of Florida ....................................................... 14

        A.   The private-interest factors do not prove that the Middle
            District of Florida is clearly more convenient. ..................... 16

           1.   Access to sources of proof does not make the Middle of
                District of Florida clearly more convenient. ................. 16

           2.   The availability of compulsory process does not make
                the Middle of District of Florida clearly more convenient. ............. 17

           3.   The cost of attendance for willing witnesses does not
                make the Middle of District of Florida clearly more
                convenient. ...................................................................... 18

           4.   The other practical problems do not make the Middle
                 of District of Florida clearly more convenient. ............. 20

B.  The public-interest factors do not prove that the Middle District of Florida is clearly more convenient. ........................................ 21

1.  Court congestion does not make the Middle District of Florida clearly more convenient.................................................... 21

2.  Local interest does not make the Middle of District of Florida clearly more convenient........................................... 22

3.  The familiarity of the forum with the law does not make the Middle of District of Florida clearly more convenient. .............. 23

4.  Conflict of laws does not make the Middle of District of Florida clearly more convenient........................................ 24

C.  This Court should not transfer this case to the Middle District of Florida. ........................................................................... 24

Conclusion ...................................................................................................... 25

Certificate of Service..................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*,
    580 F.3d 233 (5th Cir. 2009) ....................................................................... 3

*Bates v. C&S Adjusters, Inc.*,
    980 F.2d 865 2d Cir. 1992) ....................................................................... 14

*Calder v. Jones*,
    465 U.S. 783 (1984) ....................................................................... 11

*Carhill v. Carbolic Smoke Ball Co.*,
    1 Q.B. 256 (Court of Appeal, 1892) ....................................................................... 1

*Cowan v. Ford Motor Co.*,
    713 F.3d 100 5th Cir. 1983) ....................................................................... 24

*Etienne v. Wolverine Tube, Inc.*,
    12 F.Supp.2d 1173 D. Kan. 1998) ....................................................................... 14

*Gaede v. SK Invs., Inc.*,
    38 S.W.3d 753 Tex. App.—Houston [14th Dist.] 2001, pet. denied) .......................... 13

*Gruntal & Co. v. Kauachi*,
    No. 92-Civ-2840, 1993 WL 33345 (S.D.N.Y. 1993) ....................................................................... 14

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) ....................................................................... 10, 11

*In re Horseshoe Entertainment*,
    337 F.3d 429 5th Cir. 2003) ....................................................................... 15

*In re TS Tech USA Corp.*,
    551 F.3d 1315 5th Cir. 2008) ....................................................................... 16, 18, 19

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*) ....................................................................... 3, 14-17, 24

*James v. Turilli*,
    473 S.W.2d 757 (Mo. App. 1971) ....................................................................... 1

*Jelec USA, Inc. v. Safety Controls, Inc.*,
    No. H-06-2379, 2006 WL 3358896 (S.D. Tex. Nov. 17, 2006) ....................................................................... 3, 12

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ....................................................................... 9

*Leonard v. Pepsico*,
    88 F.Supp.2d 116 (S.D.N.Y. 1999) ....................................................................... 1

*Mullins v. TestAmerica, Inc.*,
　564 F.3d 386 (5th Cir. 2009) ........................................................ 3

*Newman v. Schiff*,
　778 F.2d 460 (8th Cir. 1985) ........................................................ 1

*Paz v. Brush Engineered Materials, Inc.*,
　445 F.3d 809 (5th Cir. 2006) ........................................................ 3

*Phoenix Mining & Mineral, L.L.C. v. Treasury Oil Corp.*,
　No. 5:06-CV-58, 2007 WL 951866 S.D. Tex. Mar. 28, 2007)....................... 14

*Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*,
　689 F.2d 982 (11th Cir. 1982) ..................................................... 24

*Sacody Tech., Inc. v. Avant, Inc.*,
　862 F.Supp.1152 S.D.N.Y. 1994) ................................................... 14

*Seiferth v. Helicopteros Atuneros, Inc.*,
　472 F.3d 266 (5th Cir. 2006) ........................................................ 9

*Sunshine v. Manos*,
　496 S.W.2d 195 Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.) .................. 13

*Van Dusen v. Barrack*,
　376 U.S. 612 1964)................................................................. 24

*Vanegas v. Am. Energy Servs.*,
　224 S.W.3d 544 (Tex. App.—Eastland 2007, pet. granted) ....................... 13

## Statutes

28 U.S.C.  § 1404(a)...........................................................2-4, 14-15, 24

28 U.S.C. § 1391(a)(2) ............................................................. 12

45 U.S.C. § 56.................................................................... 18

## Rules

Fed. R. Civ. P. 12(b)(2)......................................................... 2, 4, 9

Fed. R. Civ. P. 12(b)(3).......................................................... 2-3, 4

Fed. R. Civ. P. 12(b)(5)......................................................... 2, 9

Fed. R. Civ. P. 45(c)(3) ......................................................... 17

**Treatises**

1 WILLISTON ON CONTRACTS § 1:17 (4th ed.) .................................................................. 13

11 WILLISTON ON CONTRACTS § 31:4 (4th ed.) ........................................................... 2, 11

**Other Authorities**

http://www.census.gov/popest/states/tables/NST-EST2008-01.xls ............................... 11

http://www.uscourts.gov/cgi-bin/cmsd2008.pl.................................................................. 21

This Court has jurisdiction over Mason[1] because he made his offer on national television challenging people in Texas—and the rest of the country—to prove him wrong. Venue is proper in this district because the contract was partially performed here and was breached here. And Mason has not proven that the Middle District of Florida is clearly more convenient than this district. This Court, therefore, should not dismiss Kolodziej's lawsuit or transfer this case to the Middle District of Florida.

## NATURE AND STAGE OF PROCEEDING

This is a lawsuit for breach of a unilateral contract that Mason entered into when he issued a challenge on national television that Kolodziej accepted.[2] In his challenge, Mason promised to pay $1 million to anyone who completed a trip from a jet at the Atlanta airport to the La Quinta Inn there within 28 minutes.[3] Kolodziej completed the challenge within the allowed time, but Mason has refused to pay.[4] Mason now claims that his challenge, which he made on national television, was not serious.[5]

This is what is referred to as a "prove-me-wrong case."[6] In those cases, people promise to pay large sums of money if someone can prove them wrong.[7] The contracts in prove-me-wrong cases—like in other contract cases—are enforceable if an objective,

---

[1] "Mason" refers to Defendants James Cheney Mason and J. Cheney Mason, P.A., collectively.

[2] Doc. 3 at 4.

[3] *Id.* at 2-3.

[4] *Id.* at 3-4.

[5] *Id.* at 4.

[6] *Leonard v. Pepsico*, 88 F.Supp.2d 116, 125 (S.D.N.Y. 1999).

[7] *See Newman v. Schiff*, 778 F.2d 460 (8th Cir. 1985); *Leonard*, 88 F.Supp. 2d at 127-28; *James v. Turilli*, 473 S.W.2d 757 (Mo. App. 1971); *Carhill v. Carbolic Smoke Ball Co.*, 1 Q.B. 256 (Court of Appeal, 1892).

reasonable person would have considered the defendant's statement to have been an offer.[8]

This lawsuit was recently filed, and Mason has not yet answered.  Instead, he filed:

- A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction;

- A Rule 12(b)(5) motion to dismiss for insufficient service of process;

- A Rule 12(b)(3) motion to dismiss for improper venue; and

- A 28 U.S.C. § 1404(a) motion to transfer venue to the Middle District of Florida.[9]

## ISSUES

1.    Does this Court have specific personal jurisdiction over Mason for Kolodziej's breach-of-contract claim based on the challenge that Mason issued on national television?

2.    Did a substantial part of the events giving rise to Kolodziej's breach-of-contract claim occur in this district?

3.    Is the Middle District of Florida clearly more convenient than this district?

---

[8] 11 WILLISTON ON CONTRACTS § 31:4 (4th ed.) ("Thus, the court should not inquire into the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. . . .  It is clear, therefore, that it is not the real intent but the intent expressed or apparent in the writing which is sought; it is the objective, not the subjective, intent that controls.").

[9] Doc. 7.

## STANDARDS OF REVIEW

Personal jurisdiction is reviewed *de novo*.[10]  If this Court does not conduct an evidentiary hearing, then Kolodziej only has to make a prima facie case that jurisdiction is proper.[11]  This Court considers Kolodziej's complaint, as well as any affidavits or other evidence that is submitted.[12]  This Court views the evidence in the light most favorable to Kolodziej, and all uncontroverted allegations in the complaint "must be taken as true."[13]

Decisions on motions to dismiss for improper venue are reviewed *de novo*.[14]  In deciding the motion, this Court considers the facts in the complaint, affidavits, and other evidence submitted.[15]  Unless this Court holds an evidentiary hearing, it views the evidence in the light most favorable to Kolodziej, the non-movant.[16]

Decisions on 28 U.S.C. § 1404(a) convenience transfers are reviewed for abuse of discretion.[17]

---

[10] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009) ("We review the district court's exercise of personal jurisdiction *de novo*.").

[11] *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

[12] *Id.*

[13] *Id.* (internal quotation omitted) ("uncontroverted allegations in the plaintiff's complaint must be taken as true"); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[14] *Ambraco, Inc. v. Bossclip B.V.*, 580 F.3d 233, 238 (5th Cir. 2009) ("Our *de novo* review under either Rule 12(b)(1) or Rule 12(b)(3) requires us to view all the facts in a light most favorable to the plaintiff.").

[15] *Id.* at 238.

[16] *Id.* ("In the absence of factual findings made by the district court based upon an evidentiary hearing, affidavits and other evidence submitted by the non-moving party in the context of a Rule 12(b)(3) challenge are to be viewed in the light most favorable to that party"); *Jelec USA, Inc. v. Safety Controls, Inc.*, No. H-06-2379, 2006 WL 3358896, *3 (S.D. Tex. Nov. 17, 2006) (Miller, J.) ("A court should, therefore, accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the plaintiff's favor.").

[17] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308-09 (5th Cir. 2008) (*en banc*).

### SUMMARY OF ARGUMENT

This Court should deny Mason's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction because it has specific jurisdiction over him.  The Fifth Circuit has held that there is personal jurisdiction when a defendant makes claims on national television and the lawsuit results from those claims.  Mason, therefore, is subject to specific jurisdiction in Texas because he issued his million-dollar challenge on national television and Kolodziej's lawsuit is to enforce payment of that challenge.

This Court should deny Mason's Rule 12(b)(3) motion to dismiss for improper venue.  Venue is proper in this district if a substantial part of the events giving rise to Kolodziej's breach-of-contract claim occurred here.  Kolodziej began performing the unilateral contract here when he made his plans and bought his plane tickets from his Houston home.  Mason mailed his letter refusing to pay from Orlando to Kolodziej at his Houston home, so the contract was breached in Houston (as well as in Orlando).  Because the contract was partially performed and was breached in Houston, a substantial part of the events giving rise to Kolodziej's breach-of-contract claim occurred in this district.

This Court should deny Mason's § 1404(a) motion to transfer venue to the Middle District of Florida based on the convenience of the parties.  The *en banc* Fifth Circuit recently clarified that § 1404(a) motions should not be granted unless the defendant can prove that the transferee forum is clearly more convenient than the current forum.  Mason bases his motion on conclusory allegations and scant evidence.  He has failed to carry his burden of proving that the Middle District of Florida is more convenient than this district.

## BACKGROUND

Kolodziej is a recent South Texas College of Law graduate, and Mason is a criminal-defense lawyer in Orlando, Florida.[18]  This is a lawsuit for breach of a contract that Mason entered into when he issued a challenge on national television that Kolodziej accepted.[19]

**Mason represented a wealthy businessman in a high-profile capital-murder trial.**

This case arises out of Mason's representation of Nelson Serrano in his capital-murder trial.[20]  Nelson Serrano, a wealthy businessman, was accused of killing his business partner George Gonsalves and others in 1997.[21]  The murders happened in central Florida, but Serrano claimed that he was in Atlanta that day.[22]  Video cameras at an Atlanta La Quinta showed Serrano at the hotel a few hours after the murders.  Serrano's defense was that it would have been impossible for him to have committed the murders in Florida and been at the Atlanta La Quinta by the time the video showed him there.  The jury rejected Serrano's defense and convicted him of the murders in 2006.[23]  He was then sentenced to death.[24]  As of today, he is still on death row.[25]

---

[18] Doc. 3 at 3; Ex. 1.

[19] Doc. 3 at 4.

[20] *Id.* at 2.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

Serrano's murder trial received a great deal of publicity and was broadcast on Court TV.[26]  The publicity continued even after the trial.  In December 2006, the Dateline television program on NBC—which is broadcast throughout the country—featured Serrano's case.[27]  Mason went on the program to argue that it was impossible for Serrano to have committed the murders.[28]

**Mason issued his million-dollar challenge on national television.**

Mason argued on Dateline that there was no way that Serrano could have committed the murders in Florida and been at the Atlanta La Quinta by the time the video showed him there.[29]  The Dateline transcript said that "[i]n less than half an hour, Serrano would have had to get off a wide body jet, exit Atlanta airport—one of the busiest in the world—and arrive back at his hotel five miles away.[30]   All in time to be photographed looking up at that surveillance camera."[31]  Mason then issued the challenge at the center of this lawsuit. [32] According to the Dateline transcript, Mason said:  "I challenge anybody to show me, I'll pay them a million dollars if they can do it."[33]  Again according to the Dateline transcript, the reporter questioned Mason to make sure he understood the terms of the challenge:  "If they can do it in the time

---

[26] *Id.*; Ex. 1.

[27] Doc. 3 at 3 (a transcript of the Dateline program is available at http://www.msnbc.msn.com/ id/16306307// (last accessed July 22, 2009)).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

allotted?"[34]  The Dateline transcript shows that Mason then said:  "28 minutes.  Can't happen.  Didn't happen."[35]

**Kolodziej accepted Mason's challenge.**

Kolodziej—who was a law student at South Texas College of Law at the time—followed the Serrano case on Court TV.[36]  From his home in Houston, Kolodziej saw Mason issue the challenge on Dateline and decided to accept it.[37]  He wanted to see if he could prove that the prosecution's theory was correct and that Serrano could have murdered those people.[38]

Kolodziej planned his trip from Houston.[39]  He spent hours researching the best ways to perform the trip and spent $596.10 on the plane tickets he would need.[40]  At least three witnesses—Latina Robertson, Felipe Arboleda, and Dominique Dominguez—observed Kolodziej's planning and efforts.[41]

In December 2007—just after the tenth anniversary of the murders—Kolodziej traveled to Georgia to complete the challenge.[42]  He retraced Serrano's alleged route, flying from Atlanta to Orlando, driving to the scene of the murders, then flying back to

---

[34] *Id.*

[35] *Id.*

[36] Id.; Ex. 1.

[37] Ex. 1 (Kolodziej saw the program when it was rebroadcast on MSNBC in June 2007.)

[38] Doc. 3 at 3.

[39] Ex. 1.

[40] *Id.*

[41] *Id.*

[42] Doc. 3 at 3.

Atlanta.[43]  Kolodziej made the last leg of the journey—from the airplane to the La Quinta—within the required 28 minutes.[44]

**Mason breached his contract when he refused to pay Kolodziej**

Kolodziej made a video tracking his trip.[45]  He sent the video, along with a demand letter, to Mason when he returned from the trip.[46]  Mason wrote Kolodziej back in January 2008.[47]  He told Kolodziej that it was just a joke and that "[c]ertainly neither you (reasonably) or anybody else could think that there was a clear intention to pay anybody a million dollars or any other amount."[48]  Undercutting his argument that no one would reasonably believe his challenge was legitimate, Mason told Kolodziej that others had tried to accept it—although no one else had succeeded.[49]  Mason refused to pay Kolodziej the promised $1 million.[50]

Kolodziej wrote Mason back and informed him again that he owed the money.[51]  In February 2008, Mason wrote Kolodziej back and again refused to pay.[52]  Mason then said that he would "consider any further communications from [Kolodziej] to be in the nature of attempted extortion and/or mail fraud, and will act accordingly."[53]

---

[43] *Id.*

[44] *Id.* at 4.

[45] *Id.*

[46] *Id.*; Ex. 1; Ex. 1-A.

[47] Doc. 3 at 4; Ex. 1; Ex. 1-B.

[48] Doc. 3 at 4; Ex. 1-B.

[49] Ex. 1-B

[50] Doc. 3 at 4; Ex. 1-B.

[51] Doc. 3 at 4; Ex. 1-C.

[52] Doc. 3 at 4; Ex. 1-D.

[53] Doc. 3 at 4; Ex. 1-D.

Kolodziej sent his demand letters from Houston to Mason in Orlando.[54]  Mason

sent his letters refusing payment from Orlando to Kolodziej in Houston.[55]

## ARGUMENT

**I.  This Court should deny Mason's motion to dismiss for lack of personal jurisdiction.[56]**

This Court has specific jurisdiction over Mason because he directed his

challenge to Texas when he made it on national television related to a case that had

received nationwide publicity.[57]

As Mason agrees, Texas' long-arm statute goes as far as the United States

Constitution allows, so the only question is whether it is unconstitutional to require

Mason to defend this case in Texas federal court.[58]  The Fifth Circuit uses a three-step

analysis to determine whether exercising specific jurisdiction is unconstitutional:

- Does the defendant have minimum contacts with the forum state?

- Does the plaintiff's cause of action arise out of the defendant's contacts with the forum state?

- Is exercising personal jurisdiction over the defendant fair and reasonable?[59]

---

[54] Ex. 1; Ex. 1-A; Ex. 1-C.

[55] Ex. 1; Ex. 1-B; Ex. 1-D.

[56] Mason has moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and to dismiss for lack of service under Rule 12(b)(5).  Doc. 7 at 1; Doc. 8 at 4 n.1.  Mason does not challenge the fact that he was served with process.  Instead, he argues that service is not effective because he is not subject to personal jurisdiction in this district.  Doc. 8 at 4 n.1.  He admits that the analysis of his Rule 12(b)(5) motion and Rule 12(b)(2) motion are the same.  *Id.* ("The Rule 12(b)(5) inquiry thus devolves to a Rule 12(b)(2) analysis . . . .").  So if this Court denies his motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), then it necessarily should deny his motion to dismiss for lack of service under Rule 12(b)(5).

[57] Kolodziej is withdrawing his argument that Mason is subject to general jurisdiction in Texas.

[58] Doc. 8 at 4; *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

[59] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

9

If the plaintiff meets the first two prongs, then "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."[60] Mason has not argued that this Court exercising jurisdiction over him is unfair or unreasonable, so the only questions are whether he has minimum contacts with Texas and Kolodziej's lawsuit arises out of those contacts.[61]

### A.    Mason has minimum contacts with Texas because he broadcast his challenge on national television.

The Fifth Circuit has held that there can be specific jurisdiction based on statements made in national publications or nationwide broadcasts.  In *Guidry v. U.S. Tobacco Co.*, the Fifth Circuit held that there was specific jurisdiction in Louisiana against tobacco trade associations based on their statements in national publications and national broadcasts that tobacco was safe.[62]  The publications were sold in Louisiana and the broadcasts were received there, but the Fifth Circuit did not require evidence that the statements were specifically aimed at Louisiana (as opposed to any of the other 49 states).[63]  The Fifth Circuit held that an act done outside a state can support jurisdiction in that state if it "has consequences or effects within the state"

---

[60] *Id.*

[61] *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) ("Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal quotation omitted).

[62] *Id.* at 626-30.

[63] *Id.* at 626 ("at least one of the tobacco trade association defendants caused its representatives to appear on national network television programs and broadcast into Louisiana knowingly false representations that the tobacco products were not addictive").

that "are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."[64]

Mason made his challenge on national television on the Dateline program.[65] The program was broadcast to every state in the country, including Texas.[66] When he offered $1 million for making a trip from an airplane in Atlanta to a hotel there within 28 minutes, it was highly likely that people throughout the country would try to do it. The facts have borne that out, with Mason admitting that others besides Kolodziej attempted the challenge.[67] Texas is the second largest state in the country, with over 20 million people.[68] Texas' two largest cities are about a two-hour flight away from the Atlanta airport, so it was highly likely that some of those who would try would come from the state.[69]

Mason claims that he never intended to pay anyone the $1 million if they met his challenge.[70] Because contracts are based on objective standards, as opposed to subjective intent, the fact that Mason claims he did not mean what he said does not affect whether it was a valid offer.[71] It just proves Mason intended to breach from the beginning. The loss of the $1 million benefit of the bargain was, therefore, highly likely to result from anyone accepting and meeting Mason's challenge.

---

[64] *Id.* at 628 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

[65] Doc. 3 at 3.

[66] Ex. 1.

[67] Ex. 1-B.

[68] http://www.census.gov/popest/states/tables/NST-EST2008-01.xls.

[69] Ex. 2.

[70] Ex. 1-B; Doc. 8 at 4.

[71] 11 WILLISTON ON CONTRACTS § 31:4 (4th ed.).

Mason, therefore, created minimum contacts with Texas when he went on national television and offered $1 million to anyone who completed the last leg of the trip within 28 minutes.

### B. Kolodziej is suing over that challenge, so his lawsuit arises from Mason's Texas contacts.

Mason's Texas contact is his challenge on Dateline, and Kolodziej's lawsuit is based on that challenge. Kolodziej's lawsuit, therefore, arises from Mason's Texas contacts.

This Court has specific jurisdiction over Mason because (1) he has minimum contacts with Texas, (2) Kolodziej's lawsuit arises from those contacts, and (3) he has not attempted to prove that exercising jurisdiction over him is unfair or unreasonable. This Court, therefore, should deny Mason's motion to dismiss for lack of personal jurisdiction.

## II. This Court should deny Mason's motion to dismiss for improper venue.

Venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred."[72] As this Court has held, there can often be more than one proper venue for a lawsuit.[73]

Mason argues that this Court should consider where the contract was negotiated or executed, where it was performed, and where it was breached.[74] Considering those factors shows that a substantial part of the events giving rise to Kolodziej's breach-of-contract claim occurred in this district.

---

[72] 28 U.S.C. § 1391(a)(2).

[73] *Jelec USA*, 2006 WL 3358896, *4 ("Often, a lawsuit may allow for proper venue in more than one judicial district.").

[74] Doc. 8 at 10.

Kolodziej performed the contract in Houston, as well as in Georgia and Florida.[75]  This case involves a unilateral contract.  Unlike the more common bilateral contract—where the parties exchange promises—a "unilateral contract results from an exchange of a promise for an act."[76]  Kolodziej accepted Mason's offer of a unilateral contract when he performed the challenge.[77]  Kolodziej's performance did not begin when he got to Georgia, however.  Instead, his performance began when he expended time and money to complete the challenge.[78]

When performance begins is important in unilateral contracts, because the offeror is free to revoke the offer until the offeree begins to perform.[79]  But once the offeree has expended time and money, the offeror can no longer revoke.  The offer has become binding.[80]  Kolodziej spent many hours in Houston mapping out his route and making arrangements.[81]  And he spent $596.10 in Houston buying the plane tickets.[82]

---

[75] *See id.* at 11 (arguing that Kolodziej only performed the contract in Georgia and Florida).

[76] 1 WILLISTON ON CONTRACTS § 1:17 (4th ed.).

[77] *Vanegas v. Am. Energy Servs.*, 224 S.W.3d 544, 549 (Tex. App.—Eastland 2007, pet. granted).

[78] *Sunshine v. Manos*, 496 S.W.2d 195, 199 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.) ("It has been held that in order to prove partial performance, it must be shown that there was an expenditure of time and money.").

[79] *Id.* at 198 ("Where a contract is unilateral on its face, it does not come into existence as a binding contract until the broker has performed, or at least partly performed, his duties under the agreement. Prior to that time, it is nudum pactum and may be revoked by the offeror at any time."); *Strother v. Ryon*, 239 S.W.2d 858, 859 (Tex. Civ. App.—Fort Worth 1951, no writ) ("We believe it is the law in Texas that part performance of a consideration may make the contract irrevocable, that is to the extent where the broker has started such action by spending money and time in his efforts to perform. This theory of conditional contract seems to have the support of many of the states.").

[80] *Gaede v. SK Invs., Inc.*, 38 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Texas courts have long held that expenditure of time and effort is sufficient consideration to make a unilateral contract binding and enforceable.").

[81] Ex. 1.

[82] *Id.*

Therefore, it was in Houston that Kolodziej partially performed the contract and Mason's offer became irrevocable.

Mason breached the contract in Houston and Orlando. Mason breached the contract when he wrote to Kolodziej and said that he was refusing to pay. Mason sent the letter from Orlando to Kolodziej in Houston.[83] As a sister court in this district has held, interdistrict communications "are as much connected to one judicial district as to another."[84] Therefore, the contract was breached in Houston, as well as in Orlando.

Because a substantial part of the contract was performed in this district and the breach occurred in this district, a substantial part of the events giving rise to Kolodziej's breach-of-contract claim occurred in this district.[85] Venue, therefore, is proper here.

## III.    This Court should deny Mason's motion to transfer this case to the Middle District of Florida.

The *en banc* Fifth Circuit recently confirmed that the plaintiff's choice of a proper forum cannot be upset without good cause.[86] A defendant is not entitled to a

---

[83] Ex. 1; Ex. 1-B; Ex. 1-D.

[84] *Phoenix Mining & Mineral, L.L.C. v. Treasury Oil Corp.*, No. 5:06-CV-58, 2007 WL 951866, *9 (S.D. Tex. Mar. 28, 2007) (Alvarez, J.) (brackets in original omitted).

[85] *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (a substantial part of the plaintiff's Fair Debt Collections Practices Act took place in the district when the plaintiff received the collection letter there); *Etienne v. Wolverine Tube, Inc.*, 12 F.Supp.2d 1173, 1181 (D. Kan. 1998) (finding that a contract was breached in Kansas when the defendant, who was out of state, fired the plaintiff during a telephone call with the plaintiff, who was in Kansas); *Gruntal & Co. v. Kauachi*, No. 92-Civ-2840, 1993 WL 33345, *2 (S.D.N.Y. 1993) (a substantial part of a fraud claim occurred in the Southern District of New York when the defendant, who was out of the district, allegedly defrauded the plaintiff on telephone calls that the plaintiff made from the district); *see also Phoenix Mining*, 2007 WL 951866, *9 ("The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.") (quoting *Sacody Tech., Inc. v. Avant, Inc.*, 862 F.Supp.1152, 1157 (S.D.N.Y. 1994)).

[86] *In re Volkswagen*, 545 F.3d at 315 ("The 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled.").

convenience transfer under 28 U.S.C. § 1404(a) unless he can "clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'"[87]  So this Court should not transfer this case to the Middle District of Florida unless Mason proves that district is "clearly more convenient" than this one.[88]

To decide whether the Middle District of Florida is clearly more convenient than this district, this Court considers four private-interest factors and four public-interest factors.[89]  The private-interest factors are:

- The relative ease of access to sources of proof;

- The availability of compulsory process to secure the attendance of witnesses;

- The cost of attendance for willing witnesses; and

- All other practical problems that make trial of a case easy, expeditious and inexpensive.[90]

The public-interest factors are:

- The administrative difficulties flowing from court congestion;

- The local interest in having localized interests decided at home;

- The familiarity of the forum with the law that will govern the case; and

- The avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

---

[87] *Id.*  (quoting 28 U.S.C. § 1404(a) (brackets in *Volkswagen*)); *see* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

[88] *In re Volkswagen*, 545 F.3d at 315 ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

[89] This Court also has to satisfy itself that venue is proper in the proposed transferee district.  *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003).  That step is not needed here because Kolodziej agrees that the venue would also be proper in the Middle District of Florida.

[90] *In re Volkswagen*, 545 F.3d at 315.

Mason is incorrect when he argues that these factors support transfer to the Middle District of Florida. Instead, these factors support keeping venue here or are neutral. They certainly do not show that the Middle District of Florida is "clearly more convenient."[91]

### A.    The private-interest factors do not prove that the Middle District of Florida is clearly more convenient.

The private-interest factors either weigh against transfer or are neutral. None weigh in favor of transfer. The private-interest factors, therefore, do not prove that the Middle District of Florida is clearly more convenient.

### 1.    Access to sources of proof does not make the Middle of District of Florida clearly more convenient.

Mason argues that the sources of proof "are located primarily in Florida."[92] He bases that on his claim that Mason, the NBC employee who conducted the interview, and someone who was at the interview live in Florida.[93] Mason misunderstands what the Fifth Circuit means by sources of proof. It refers to "documents and physical evidence," not witnesses.[94] Those are handled in the second and third private-interest factors.

---

[91] *Id.*

[92] Doc. 8 at 13.

[93] *Id.*

[94] *In re Volkswagen*, 545 F.3d at 316; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (5th Cir. 2008) (including "physical evidence" and "documentary evidence"—but not witnesses—in sources-of-proof analysis).

16

Mason does not provide evidence of any document or physical evidence located in the Middle District of Florida.  He admits that the original tapes of his interview are with NBC, which is based in New York.[95]

The originals of Kolodziej's documents and physical evidence are in Houston. Those include the videotape he made to document his trip, as well as his receipts.[96]

Because there is no evidence that any of the sources of proof are in the Middle District of Florida, but there is evidence that key sources of proof are in this district, this factor weighs against transfer.

> **2.    The availability of compulsory process does not make the Middle of District of Florida clearly more convenient.**

In deciding whether compulsory process is available, the question is which witnesses are within 100 miles of the courthouse.[97]  That makes them subject to subpoena for trial and depositions[98]

Mason makes the conclusory allegation—unsupported by citation to any evidence—that "[c]ompulsory process will reach more of the key witnesses in the Middle District of Florida than in this district."[99]  Mason only identifies two potential witnesses who live in Florida:  The NBC interviewer who lives in Delray, Florida, and a lawyer who was at the interview, who lives in Lakeland, Florida.[100]  Lakeland is in the Middle District of Florida, so that lawyer is subject to compulsory process there.

---

[95] Doc. 8 at 13.

[96] Ex. 2.

[97] *In re Volkswagen*, 545 F.3d at 316.

[98] *Id.*; FED. R. CIV. P. 45(c)(3).

[99] Doc. 8 at 13-14.

[100] Doc. 8-2 at 4.

Delray is 165 miles from Orlando, however (it is in South Florida, north of Fort Lauderdale).  The NBC interviewer, therefore, is not subject to compulsory process in the Middle District of Florida.

At least three witnesses live in this district.[101]  These witnesses—Latina Robertson, Felipe Arboleda, and Dominique Dominguez—will testify regarding the steps Kolodziej took to comply with Mason's challenge, as well as about how third parties viewed Mason's challenge.[102]  These witnesses are subject to compulsory process if this case remains here, but they will not be if this case is transferred to the Middle District of Florida.

Mason identifies only one witness who is subject to compulsory process in the Middle District of Florida, while Kolodziej has identified three who are subject to compulsory process here.  That weighs against transferring this case.

### 3.    The cost of attendance for willing witnesses does not make the Middle of District of Florida clearly more convenient.

The Fifth Circuit uses the "100-mile rule" when deciding whether the cost of attendance for willing witnesses favors transfer.[103]  Under that rule, when the proposed venue is more than 100 miles from the current one, "the factor of

---

[101] This is one of the ways that this case is different from the railroad cases that Kolodziej's lawyer discussed in his amicus brief in the Volkswagen case.  *See* Doc. 8 at 15.  While it is clever of Mason to find briefs that Kolodziej's lawyer filed in other cases, it is not that helpful here.  The cases that were discussed in that amicus brief were brought under a venue statute that allowed cases to be brought anywhere the defendant did business—regardless of the venue's connection to the case.  *See* Brief of Union Pacific Railroad Co., et al. at 6 in *In re Volkswagen of America, Inc.*, No. 07-40058 (5th Cir.) (citing 45 U.S.C. § 56).  Plaintiffs who had never been to Texas all sued in Lufkin, even though none could identify any connection between the Eastern District of Texas and their injuries.  *Id.* at 11-12.  Here, Kolodziej lived in this district when his cause of action arose, and he began performing the contract from his home here.  Ex. 1.  While other districts have connections as well, this case is firmly rooted in this district.

[102] Ex. 1.

[103] *In re TS Tech*, 551 F.3d at 1320.

inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."[104]

The three witnesses in Houston will each have to travel an additional 960 miles if this case is transferred to the Middle District of Florida.[105]  All three will have to stay overnight if they travel to Florida, but not if the case stays here.[106]  That will cause them to incur lodging expenses and increase the time they spend away from work.[107]

If the case stays in Houston, two of the three witnesses that Mason identified would have to travel from Florida and one from New York.[108]  It would be further for them to travel to Houston than to the Middle District of Florida.  But, two of those witnesses would be forced to stay overnight if they traveled to the Middle District of Florida.[109]  One would be coming from Scarsdale New York, which is 1,105 miles from Orlando, and another would be coming from Delray, Florida, which is 165 miles away.[110]  So two of the three witnesses Mason identifies would be inconvenienced no matter where the case is heard.

---

[104] *Id.*

[105] Ex. 2.

[106] *Id.*

[107] *In re TS Tech*, 551 F.3d at 1320 ("It goes without saying that additional distance from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.") (internal quotations and brackets omitted).

[108] Doc 8-2 at 4.

[109] Ex. 2.

[110] *Id.*

The witnesses identified so far would travel a combined 2,880 additional miles if the case is transferred to the Middle District of Florida (an average of 960 miles).[111] They would travel a combined 2,273 additional miles if the case stays here (an average of 758 miles).[112]  Five of six witnesses would have to stay overnight if the case is transferred, but only three would have to if the case remains here.[113]  The convenience of willing witnesses, therefore, is either neutral or weighs slightly against transfer.  It does not clearly favor transfer.

### 4.    The other practical problems do not make the Middle of District of Florida clearly more convenient.

Mason says that "in light of the residences of all but one of the witnesses being in Florida or New York," the Middle District of Florida "is certainly the district where the trial would be easiest, most expeditious and least expensive."[114]  Mason is wrong about all but one of the witnesses being in Florida or New York, and he does not explain why a witness in New York makes Orlando an especially good venue.  And even if he were right about the witnesses, they are considered in the second and third private-interest factors.  Mason appears to be double-counting by trying to use the witnesses again in the fourth factor.

It appears that this factor is neutral, so it does not clearly weigh in favor of transfer.

---

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] Doc. 8 at 14.

**B.    The public-interest factors do not prove that the Middle District of Florida is clearly more convenient.**

Like the private-interest factors, the public-interest factors either weigh against transfer or are neutral. None weigh in favor of transfer. The public-interest factors, therefore, do not prove that the Middle District of Florida is clearly more convenient.

**1.    Court congestion does not make the Middle District of Florida clearly more convenient.**

Mason argues that "administrative difficulties flowing from court congestion would appear to be the same either in the Middle District of Florida or here."[115] They may "appear to be the same" to Mason because he did not bother to include any evidence regarding court congestion in either district. When the statistics are examined, however, the evidence shows that the Middle District of Florida is much more congested than this district.[116]

The judges in the Middle District of Florida average 888 pending cases each, while the judges in this district average 465.[117] That means each judge in the Middle district has almost twice as many cases as each judge here. It is not surprising that their heavy caseload has hurt their ability to quickly resolve civil cases: The median time for a civil case to be resolved is 40% longer in the Middle District of Florida.[118] This district has the sixth quickest civil-disposition time in the country and the fastest

---

[115] *Id.* (italics omitted).

[116] Ex. 3 (data from http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last accessed July 26, 2009)).

[117] *Id.*

[118] *Id.*

in the Fifth Circuit.[119]  The Middle District of Florida has the forty-first quickest civil-disposition time in the country and is in the bottom half of the Eleventh Circuit.[120]

There is also a greater danger that a civil case will languish in the Middle District of Florida.  This district—which has one-and-a-half times the filings as of the Middle District of Florida—had 143 cases last year that had been pending over three years.[121]  The Middle District of Florida had 220 cases.[122]  And it is not just the numbers that are troubling; it is also the trajectory.  This district has been steadily reducing its older cases (those over three-years old), dropping from 229 in 2006 to 143 last year.[123]  The Middle District of Florida is going in the other direction.  It has steadily increased its older cases from 74 in 2003 to 220 in 2008.[124]

Transferring this case to the Middle District of Florida will move it from a district that is quickly resolving its civil cases to one that is congested.  That will only make a bad situation worse.  This factor weighs against transfer.

### 2.    Local interest does not make the Middle of District of Florida clearly more convenient.

Mason argues that the local interest is stronger in Florida because the interview took place there and several witnesses are there.[125]

Mason is correct that Orlando has connections with this case.  But this is not a local Orlando story.  This case arises from a national television broadcast related to a

---

[119] *Id.*

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] Doc. 8 at 14.

murder trial that was covered gavel-to-gavel on Court TV.[126]  Not only was the

underlying murder case and Mason's challenge national news, but this lawsuit has

received coverage throughout the country and the world.[127]  There have been radio

stories about this case in Alaska and Toronto, and news stories on the London Times'

website.[128]  The legal blogs have been quite taken with this case because it illustrates

fundamental contract-law principles.[129]

     While there are certainly Florida connections, the Houston connection is strong

as well because Kolodziej was a law student at South Texas College of Law when he

performed the challenge.[130]  That led to the Houston Fox affiliate making this case the

top story on its evening news.[131]

     Because this case is connected to both the Middle District of Florida and this

district, the local-interest factor is neutral.

### 3.    The familiarity of the forum with the law does not make the Middle of District of Florida clearly more convenient.

     Mason argues that the familiarity of the forum with the law weighs in favor of

the Middle District of Florida because, he claims, Florida law will apply.[132]  Mason is

wrong.

     When a diversity case is transferred based on convenience, the transferee court

continues to apply the law of the transferor court's state.[133]  As the Supreme Court has

---

[126] Ex. 1.

[127] Ex. 2.

[128] *Id.*

[129] *Id.*

[130] Doc. 3 at 3; Ex. 1.

[131] Ex. 2.

[132] Doc. 8 at 14.

held, a "change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."[134]  This means that the Middle District of Florida would have to apply Texas choice-of-law rules when deciding which state's law to apply.[135] This Court has much greater familiarity with Texas choice-of-law rules than courts in the Middle District of Florida.  This factor, therefore, weighs against transfer.

### 4.    Conflict of laws does not make the Middle of District of Florida clearly more convenient.

As explained above, the Middle District of Florida will have to apply Texas' choice-of-law analysis.[136]  This factor, therefore, weighs against transfer.

### C.    This Court should not transfer this case to the Middle District of Florida.

Of the four private-interest factors, two weigh against transfer and two are neutral.  Three of the public-interest factors weigh against transfer, and one is neutral.  Mason is not entitled to a § 1404(a) transfer unless he can "clearly demonstrate" that the Middle District of Florida is "clearly more convenient" than the Southern District of Texas.[137]  Five factors against transfer, three neutral, and none in favor does not meet the Fifth Circuit's standard.  This Court, therefore, should deny Mason's motion to transfer because he failed to carry his burden of proof.

---

[133] *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

[134] *Id.*

[135] *Cowan v. Ford Motor Co.*, 713 F.3d 100, 104 n.6 (5th Cir. 1983) ("If the case is in fact transferred to another federal district court pursuant to a motion by Ford under § 1404(a), the transferee court must act as would the transferor court and follow Mississippi choice-of-law rules."); *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 991 (11th Cir. 1982)  ("When a defendant moves successfully for a transfer to a more convenient forum under 28 U.S.C.  § 1404(a), however, the transferee court must apply the same state law that the transferor court would have applied.").

[136] *Cowan*, 713 F.3d at 104 n.6; *La Quinta*, 689 F.2d at 991.

[137] *In re Volkswagen*, 545 F.3d at 315.

## CONCLUSION

This Court should deny Mason's motions to dismiss and his motion to transfer venue.

Respectfully submitted,

/s/ David George
David George
Federal ID No. 19330
Texas Bar No. 00793212
CONNELLY • BAKER • WOTRING LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002
Telephone:  (713) 980-6513
Facsimile: (713) 980-1701
dgeorge@connellybaker.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF DUSTIN S. KOLODZIEJ

## CERTIFICATE OF SERVICE

I certify that this document was served on all counsel of record through the District Clerk's ECF system on July 27, 2009.

/s/ David George
David George