UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUSTIN S. KOLODZIEJ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-1889 |
| | § | |
| JAMES CHENEY MASON, AND, | § | |
| J. CHENEY MASON, P.A., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is defendants' motion to dismiss or in the alternative transfer. Dkt. 7. Upon consideration of the motion, the response, the reply, and the applicable law, the motion is GRANTED, and the case is DISMISSED without prejudice to refiling in a court of appropriate jurisdiction.

## BACKGROUND

Assuming for the purposes of this order only that the facts as related by the plaintiff are true, this case is based on the breach of a unilateral contract in the form of a challenge issued during a television interview of the defendant James Cheney Mason. Mason, a criminal defense attorney, was interviewed by NBC's Dateline regarding his defense in a highly publicized capital murder trial. During the trial, Mason argued that his client could not have committed the murders in central Florida because the client was spotted shortly afterwards miles away in Atlanta. In the version of the interview that subsequently aired, Mason allegedly challenged anyone to make it from the scene of the murders in middle Florida to a La Quinta in Atlanta—where the defendant had been seen—in 28 minutes as the prosecution argued at trial. He allegedly said, "I challenge anybody to show me,

I'll pay them a million dollars if they can do it." The plaintiff Dustin S. Kolodziej saw the program, and on the tenth anniversary of the trial allegedly made the trip in the allotted time. When he demanded payment from Mason, Mason refused payment, saying that the statement was in jest to prove a point as any reasonable person would have known. Kolodziej brought suit in this court against Mason for breach of contract.

Kolodziej resided in Houston at the time he saw the television program. Mason lives and works in Florida. He is not a member of the Texas Bar, pays no taxes in Texas, maintains no residence in Texas, and represents no clients in Texas. He does not advertise in Texas, and his website is purely passive. His few visits to the state have been to see relatives or attend conventions. The interview in question took place in Florida as did the trial. Mason lives in Florida, is a member of the Florida Bar, and practices almost exclusively in Florida. Mason now moves the court to dismiss the case for lack of personal jurisdiction, improper venue, and/or insufficient service. Alternatively, he moves the court to transfer the case to the Middle District of Florida where he resides and the events precipitating this suit occurred.

## THE APPLICABLE LAW

While the defendants have made colorable arguments on each of their grounds to dismiss, the court finds that it lacks personal jurisdiction over the defendants and stops its analysis at that point.

**1.      Dismissal under 12(b)(2) for Lack of Subject Matter Jurisdiction**

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmeric, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "Because the Texas long-arm statute extends to the limits of federal due process, the

two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008). "To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Mullins*, 564 F.3d at 398 (internal quotations omitted).

"Jurisdiction may be general or specific." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir.2008). "Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state." *Mullins*, 564 F.3d at 398 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174 (1985); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir.2000)). "In contrast, general jurisdiction requires the defendant to have maintained 'continuous and systematic' contacts with the forum state." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984)).

A.   **General Jurisdiction**

The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir.2001) (citation omitted). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction ...." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir.2002) (citations omitted). The Fifth Circuit imposes a high standard when ruling on general jurisdiction issues. *Johnston*, 523 F.3d at 611 (collecting cases illustrating the difficulty of proving general jurisdiction). Mason's limited contacts with Texas fall far short of establishing general jurisdiction.

3

Kolodziej, however, argues that this court has personal jurisdiction over Mason based on specific jurisdiction.

### B. Specific Jurisdiction

"[T]he party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a nonresident defendant." *Guidry v. U.S. Tobacco*, 188 F.3d 619, 625 (5th Cir. 1999). However, at this stage the plaintiff need only make a prima facie case to support jurisdiction. *Alpine View*, 205 F.3d at 215. Therefore, to survive this motion to dismiss, Koldziej must make a prima facie showing that his claim "arises out of or relates to activities that [Mason] purposefully directed at the forum state." *Mullins*, 564 F.3d at 398. The court finds that Kolodziej has failed to meet his burden to show jurisdiction even under the generous prima facie standard.

All of the contacts with Texas in this case exist because Kolodziej himself was in Texas. He argues that Mason broadcast the challenge on national television, and since Houston is a short plane trip away from Atlanta, Mason should have anticipated that someone in Houston would accept the challenge. In essence, Kolodziej invokes the *Calder* effects test. The Fifth Circuit, in *Mullins*, recently revisited the *Calder* effects test.

> Under *Calder*, an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. *Calder* involved a suit brought by a California actress in a California state court against two Florida employees of a tabloid magazine based on an allegedly libelous article featured in one of its issues. The Supreme Court concluded that the defendants, who wrote and edited the article, knew that its injurious effects would be felt by plaintiff in California and had therefore "expressly aimed" their intentional and allegedly tortious conduct at the forum state. Critically, the focal point of the article itself was also California, since it was drawn primarily from California sources and pertained to an actress whose career was centered in California. Thus, the key to *Calder* is that the effects of an

4

>alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum.

*Id.* at 399 (internal citations and quotations omitted). As the *Mullins* court reiterated, "[t]he 'effects' test in *Calder* does not supplant the need to demonstrate minimum contacts that constitute purposeful availment, that is, conduct by the non-resident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state resident." *Id.* Giving a television interview simply does not rise to the level of purposeful availment contemplated under *Calder*. The simple fact that the interview was televised nationally does not subject Mason to personal jurisdiction in all 50 states—no matter how short the plane flight to Atlanta—absent other contacts. *See id.* ("[W]e do not presume that the tortious act itself categorically satisfies the requirement of purposeful availment."); *Revell*, 317 F.3d at 473("[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction."). Even under *Calder*, the defendants reached out to California when they aimed their story at California, using California sources about a California actress. *Calder*, 465 U.S. at 788–89. And, although the Dateline news program aired nationally, the facts here show the reverse—that the plaintiff reached out to the defendants in Florida. Therefore, the court finds that the defendants lack sufficient contacts with Texas to establish either specific or general jurisdiction. Accordingly, this court lacks personal jurisdiction over the defendants and the case must be dismissed.

5

## CONCLUSION

Pending before the court is defendants' motion to dismiss or in the alternative transfer. Dkt. 7. Based on the lack of minimum contacts with Texas required to establish personal jurisdiction, the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is GRANTED. This case is DISMISSED.

It is so ORDERED.

Signed at Houston, Texas on October 22, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY